Jack Rosenberg, J.
This is a motion to dismiss an indictment charging defendant with two counts each of sale of a dangerous drug in the third degree, possession of a dangerous drug in the fourth degree, and possession of a dangerous drug in the sixth degree. The indictment was filed in Kings County on December 23,1969. An arrest warrant was issued on the same day by the Supreme Court, Kings County.
The indictment was preceded by the arrest of the defendant on October 20, 1969 by Patrolman Herbert Yarkon of the Narcotics Division on a charge of having sold narcotics to an undercover New York City police officer on September 12,1969, and his arraignment in Brooklyn Criminal Court. On December 1,1969 the case was dismissed by Judge Cawse of that court for failure of the People to prosecute. On December 17, 1969 a Grand Jury sitting in Kings County voted the indictment which was filed on December 23, 1969 and which is the subject of the instant motion to dismiss.
The arrest warrant was forwarded to the records and information section of the Narcotics Division and on January 28, 1970 this warrant was assigned to Patrolman Yarkon, the original arresting officer, for execution. He was unable to execute it and it was returned unexecuted to the Narcotics Division on February 24, 1970 where it apparently lay in limbo until November 5, 1971, 20% months, when it was forwarded to the Brooklyn North Narcotics office where it was assigned to an officer for execution. One day later, on November 6, 1971, the defendant was arrested for a violation of section 240.36 of the Penal Law, loitering for drugs, by Patrolman Salvatore *879 Furciato. He states, according to the People’s memorandum in opposition to .the motion to dismiss, that when he called the Central Warrant Office on that date he was not informed of the outstanding warrant and therefore released the defendant on an appearance summons. On November 18, 1971 the case was 343ed in the Brooklyn Criminal Court by an Assistant District Attorney who was not aware of the outstanding warrant dating back to December 23,1969.
The Brooklyn North Narcotics office returned that warrant unexecuted to the Division Headquarters on April 7,1972 which forwarded it to the Central Warrant Office on April 11, 1972. That office on May 2, 1972 sent the warrant to the Brooklyn Warrant Office at the 78th Precinct in which the defendant had been arrested on November 6, 1971. Finally, on July 18, 1972, almost 32 months after filing of the indictment and issuance of the warrant, the defendant was arrested at his home in Brooklyn by Patrolman Donahue of the Brooklyn Warrant Squad and taken before the Supreme Court, Kings County, for arraignment. The court must note that it has found that such unusual delays occur in only one of our counties.
The People in their opposition memorandum, discussing the reason for the lengthy delay in executing the December 23, 1969 warrant, report that Patrolman Tarkon retired from the Police Department on April 18, 1972, only three months before the arrest was made pursuant to the warrant, and add that no data are available in Police Department files to show whether he made any effort to execute the warrant before it was returned to Narcotics Division Headquarters on February 24,1970. They also make no explanation of why the outstanding warrant was not reported to Patrolman Furciato on November 6,1971. They also report that no record is available to show if any attempt was made to execute the warrant by Brooklyn North Narcotics after it received the warrant on November 5, 1971. The sole explanation they give for these failures to execute the warrant is “overburdened and understaffed warrant squads” and “inadvertence of negligence,” denying only any deliberate attempt to delay the trial in order to hamper the defense.
The defendant contends that throughout this period of over two and a half years he lived with his family at the same address in Brooklyn and worked in that borough. He implies that he was at all times available for arrest under the warrant and states that he was at all times subject to the jurisdiction of the court. He also admits that during that period he was arrested on another charge in Brooklyn, some 23 months after the issuance of the warrant and the warrant was not executed even then. *880 Defendant does not state whether he knew that the indictment here in question was outstanding against him, nor whether he knew of the warrant. He contends that the long- delay in executing the warrant, absent any showing by the People of diligent effort to serve it on him or good cause for failure to bring him to arraignment is a violation of his right to a speedy trial under CPL 30.20. While he makes no mention of his right to a speedy trial under the Sixth Amendment to the Federal Constitution, this court must take cognizance that he has this right which has been made applicable to the States through the Fourteenth Amendment in Klopfer v. North Carolina (386 U. S. 213).
The issue raised here is a novel one, whether an undue and Unexplained delay by the People in executing a warrant based upon an indictment, which results not only in a denial of a speedy trial to the defendant but also in a failure to give notice to the defendant that he has been indicted for a crime, requires dismissal of the indictment. Because of such delay a defendant may be barred entirely by his ignorance of the pendency of the charge from taking steps to insure that evidence that he may need for his defense does, not disappear because of the lapse of time, evidence such as his own memory of the events that occurred at the time of the crime charged, witnesses who may exculpate him and physical evidence which may be lost or destroyed during the interval between his indictment and his . arrest on the warrant issued at the time of the indictment.
All the relevant cases cited by both the defendant and the People deal with the effect of delay by the People in bringing a defendant to trial after he has been arraigned on an indictment. People v. Prosser (309 N. Y. 353), one of the two cases cited by the defendant deals with such a situation. People v. Hall (51 App. Div. 57, 60) has only a dictum that the laws of each State provide for criminal defendants a “ speedy and public trial Similarly, all the cases cited by the People (Klopfer v. North Carolina, 386 U. S. 213, supra; Barker v. Wingo, 407 U. S. 514; People v. Alfonso, 6 N Y 2d 225; People v. Ganci, 27 N Y 2d 418 and People v. Winter, 18 Misc 2d 205), deal with delays between arraignment on an indictment and trial. In all these cases at least two of the three evils spelled out in People v. Prosser (supra) ,.by our Court of Appeals as resulting-from a violation by the People of the speedy trial guarantee of CPL 30.20 and the Sixth Amendment may have been present. They are his subjection to ‘ ‘ the anxiety and public suspicion attendant upon an untried accusation of crime ” and his being “ 1 exposed to. the hazard of a trial, after so great a lapse of time ’ that1 the means of proving his innocence may not be within his reach ’ — as, for *881 instance, by the loss of witnesses or the dulling of memory.” (People v. Prosser, supra, p. 356.) But in a case such as the one before the court, where the defendant may not even have known of his having been indicted until he is arrested pursuant to the warrant, only the last reason might apply.
The question, then, is whether such a detriment suffices to establish such a denial of the right to a speedy trial as to require this court to grant the motion to dismiss. The question also is whether the speedy trial provision of the Sixth Amendment to our Federal Constitution is applicable to a case like this where there has been an indictment but no arrest and arraignment thereunder. In this connection the language of the United States Supreme Court in United States v. Marion, (404 U. S. 307) is relevant. The court there said (pp. 321-322): “ Invocation of the speedy trial provision thus need not await indictment, information, or other formal charge. But we decline to extend the reach of the amendment to the period prior to arrest. Until this event occurs, a citizen suffers no restraint on his liberty and is not the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer. Passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses and otherwise interfere with his ability to defend himself. But this possibility of prejudice at trial is not itself sufficient reason to wrench the Sixth Amendment from its proper context. Possible prejudice is inherent in any delay, however short; it may also weaken the Government’s case.”
The foregoing discussion deals, however, with a situation where the delay the defendant was complaining of had arisen from the failure of the Government which clearly knew for a substantial period prior to indictment of the behavior of the defendants which served as the basis for the indictment ultimately returned. Here there was an indictment to trigger the right to a speedy trial but a failure of the People to take the speedy action called for by the State statute and Federal Constitution to apprise the defendant of the indictment by arresting him under the warrant issued at the time of the filing of the indictment.
It is this court’s conclusion, therefore, that a hearing must be held on this motion to permit the defendant to come forward _ with proof that his ability to defend himself from the charge in the indictment has been impaired and to permit the People to come forward with proof of diligent effort to execute the warrant or to show that the delay in serving the warrant of *882 arrest had not been the result of its unexcused negligence or lack of diligence. We reach this conclusion because we agree that ‘ ‘ so important a matter as dismissing an indictment because of undue delay in bringing the case on for trial calls for the exercise of extreme caution. It necessitates a decision consonant with competing rights of equal importance. Concededly, defendant’s right to a speedy trial is not absolute and unyielding, regardless of the circumstances causing the delay. The People’s right to effective enforcement of the criminal law requires that allowance be made for a reasonable time to prepare for trial and for reasonable accommodation to the pressures and needs of those charged with the duty of administering the law” (People v. Winter, 18 Misc 2d 205, 207, supra).
The foregoing conclusion is supported by the decision of Judge David T. Gibbons of the County Court of Nassau County in People v. Laskowski (72 Misc 2d 580). In that case the delay involved was in the handing up of an indictment against the defendant who had been arrested on October 31,1971 on a felony charge, assault in the second degree, and at the conclusion of a felony examination in the Nassau County District Court on January 5,1972 had been discharged because that court granted his motion to dismiss on the ground “no reasonable cause shown ”. On March 27, 1972 the matter was presented to the Nassau County Grand Jury but it was not until October 27, 1972 that that body handed up an indictment against-the defendant. There the arraignment followed quickly on November 8, 1972 when the defendant pleaded not guilty. Thereafter the defendant moved to dismiss the indictment because of a claim that the delay was a violation of his right to a speedy trial. The papers filed on the motion show the delay to be due to the pressure of the District Attorney’s case load rather than, as here, the Warrant Office’s case load. The defendknt’-s papers made no factual showing that he was prejudiced by this delay.
The court in Laskowski, after pointing out that the right to a speedy trial has been held to be a fundamental right binding on the States in Klopfer v. North Carolina (386 U. S. 213, supra) and United States v. Marion (404 U. S. 307, supra), as holding that the point at which the defendant’s right to a speedy trial is triggered is when he is arrested and held to answer for a crime. It ruled that in Laskowski the accusatory instrument by which the felony prosecution was commenced was the indictment which was filed so tardily, not the one which followed his original arrest and there was, therefore, no undue delay in bringing the defendant to trial. But the cqurt went on to note that in United States v. Marion (supra) the rule was reaffirmed that the prosecution *883 may not cause a criminal action to be intentionally delayed to gain some tactical advantage over the deféndant or to harass him. Similarly in Barker v. Wingo (407 U. S. 514, 531), the Supreme Court declared, ‘ ‘ A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government.” Judge Gibbons also said, “Where preindictment delay [in our case we have post-indictment delay but the effect is the same] is urged as a basis for dismissal, it is not mere delay alone which provides the justification for the application of the Fourteenth Amendment, but rather, the degree of prejudice suffered by the defendant.” (p. 587). The court in Laskowski then concluded that in the light of the issues raised by the opposing allegations of the parties in relation to the preindictment delay of almost 10 months a hearing should be conducted by the court to determine whether the delay was reasonable and whether the defendant suffered prejudice. This court in the instant action believes the samé procedure must be invoked with respect to the delay here imposed on the defendant between his indictment and arrest resulting therefrom, and the determination of this motion is to be held in abeyance pending' the resolution of the said issues after the hearing ordered herein.