Meyer, J.
(dissenting). This appeal illustrates the frailty of the English language and contrast in judicial philosophies. To bring the problem it presents more clearly into focus, it is important to note that we deal not with the constitutional due process right to a speedy trial, but with what the Legislature meant to require when it enacted CPL 30.30. The majority concludes that the section must be interpreted to require dismissal of a felony indictment and consequent bar to further prosecution of its charge or charges (CPL 210.20, subd 4), without trial, without any indication of prejudice to the defendant, and without any suggestion of unconscionable or improper conduct on the part of the People, in every situation in which a felony complaint is dismissed without defendant being held for the Grand Jury and the subsequently returned Grand Jury indictment is not brought to trial within six months from the date of filing of the felony complaint. In my view so to interpret the section constitutes not interpretation but judicial legislation. I, therefore, respectfully dissent.
Because we construe statutes “in a judicial role and do not function as legislators” (Allen v Cloutier Constr. Corp., 44 NY2d 290, 300-301), they are generally to be read as written even if the consequences seem unwise or undesirable to the courts (People v Kupprat, 6 NY2d 88, 90; McKinney’s Cons Laws of NY, Book 1, Statutes, § 73). Interpretation encompasses not only the words but also the spirit or purposes of an enactment, but when a court deals with an enactment which is “a fully integrated and comprehensive scheme of regulation,” such as the Criminal Procedure Law, it “cannot and should not weigh policy considerations or use creative interpretation in the application of the statutory command” (Tate, The Law-Making Function of the Judge, 28 La L Rev 211,218). Viewed against the back *47 ground of its enactment and in the matrix of the definitions and procedural directions of the CPL of which it was made a part, CPL 30.30 cannot reasonably be interpreted as requiring dismissal in the circumstances of the present cases, for a number of reasons.
Of prime importance among those reasons is the background against which the section was enacted. As the United States Supreme Court had recognized in 1905 in Beavers v Haubert (198 US 77, 87), the constitutional right to a speedy trial secures rights to the defendant but does not preclude the rights of public justice and, furthermore, is necessarily relative. In an effort to quantify and simplify the respective rights a number of States had, by the time CPL 30.30 was proposed for adoption, enacted laws or adopted procedural rules which defined the respective rights more narrowly than does the Constitution, essentially by fixing an outside time limit and stating what delays were to be excused (for good cause) in computing that time (American Bar Association, Standards Relating to Speedy Trial [Approved Draft, 1968], pp 14-16).
New York’s CPL, enacted in 1970, did not do so. Rather it simply carried over the declaration of section 8 of the Code of Criminal Procedure (see, also, Civil Rights Law, § 12) that “the defendant is entitled to a speedy trial,” thus simply repeating the language of the Sixth Amendment to the United States Constitution. Prior to the effective date of the CPL, howéver, the Administrative Board of the Judicial Conference promulgated a series of rules intended to provide á time-period definition of the right to speedy trial, which specified the time within which a criminal action had to be brought to trial (Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 30.30, 1980-1981 Supp, pp 63-65). With the obvious purpose of balancing the interests of the State in prosecuting criminal offenses with those of persons accused not to be subjected indefinitely to the obloquy and other detriments of public accusation, the Legislature enacted CPL 30.30 which requires only that the People be ready for trial within a specified time after a criminal action is begun, rather than that the case be brought to trial within that time. Furthermore, *48 it made the section effective on the day the Administrative Board Rules were to go into effect and expressly stated (L 1972, ch 184, § 5) that the section “shall be deemed to supersede any rule of the Administrative Board of the Judicial Conference specifying periods of time within which a criminal action must be brought to trial, and any such rule heretofore or hereafter adopted shall be of no force or effect.”
Relevant also to an understanding of CPL 30.30 is the work of the American Bar Association’s Project on Minimum Standards for Criminal Justice, the Advisory Committee on Criminal Trial of which had recommended Standards Relating to Speedy Trial which were approved by the ABA House of Delegates in February, 1968. The significance of those standards is twofold. First, the prestigious committee of Federal and State Judges, prosecutors, defense attorneys and professors who drafted the standards saw fit to distinguish, with respect to dismissal followed by a later charge for the same offense, between dismissal at the instance of the prosecutor, which under subdivision (f) of section 2.3 simply tolls running of the time period, and dismissal on defendant’s motion, which under subdivision (b) of section 2.2 started the time running anew. The committee quoted from People v Hamby (27 Ill 2d 493, 496) the reason for the difference in treatment: “ ‘Were it otherwise the People would be obliged to either successfully defend all such motions or incur the risk of the accused being discharged under the statute. Such perfection cannot be demanded, even of the people, nor should such a weapon to permit potential abuse be placed in the hands of an accused’ ” and added in its comment: “Of course, if the defendant successfully moves for dismissal on the ground that the time for trial has already run, this is an absolute bar (see § 4.1). More difficult is the question of what the result should be when the time for trial has already run and the defendant fails to raise this issue but instead obtains a dismissal on some other ground which in itself does not bar a new charge. Although effective arguments can be made either way, on balance it seems preferable to start the time running again from the subsequent arrest or charge.” As to *49 the situation of the present cases, where the time for trial has not yet run when there is a dismissal on other grounds followed by another charge for the same offense, the committee, referring to the annotation at 30 ALR2d 462, noted that “no clear-cut pattern is discernible” but that counting from the first charge “is more likely if the dismissal was not at the instance of the defendant” (Standards Relating to Speedy Trial [Approved Draft, 1968], p 24). The second aspect of the significance of the standards is that the bill which became CPL 30.30, though sponsored by the Governor, emanated from a bill prepared by the State District Attorneys’ Association (Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 30.30, 1980-1981 Supp, p 63). Inasmuch as the drafters of the bill undoubtedly were aware of the earlier prepared standards, the fact that CPL 30.30 does not speak directly to the situation of a dismissal (whether at the instance of defendant or of the prosecution) of charges without holding defendant for the Grand Jury followed by an indictment for the same charge strongly suggests that the drafters believed (correctly, as is argued below) that in such a case the time started running again from the subsequent indictment. In such a situation the person accused is not held indefinitely in limbo, as was the defendant in Klopfer v North Carolina (386 US 213). There the effect of North Carolina’s nolle prosequi with leave to restore procedure was indefinitely to suspend the Statute of Limitations. Under our CPL, as Mr. Justice David Gibbons noted in People v Laskowski (72 Misc 2d 580, 586), after a felony complaint is dismissed and the defendant dischárged, “the matter resume [s] the status of a criminal cause which could lie dormant until the expiration of the applicable Statute of Limitations, or, if sooner presented to a Grand Jury, it could ripen into an indictment.” There are, moreover, circumstances even more cogent than those envisioned by the Illinois court in People v Hamby (supra), in which the People should not be deprived of obtaining additional time for further investigation by asking dismissal of the proceeding first begun. One such case would be that in which after a prosecutor initiates an action the strength of the evidence on which he was proceeding is seriously compromised, as, for example, when *50 subsequent investigation casts serious doubt on the veracity of a key witness or such a witness dies or absconds (cf. People v Nizza, 95 Misc 2d 74; People v Laskowski, 72 Misc 2d 580, supra; see Matter of Forte v Supreme Ct. of State of N. Y., 48 NY2d 179, 182, n 1). The Legislature may reasonably have concluded that under such circumstances a District Attorney should not be limited to asking a continuance but rather should be allowed to seek dismissal of a pending felony complaint without thereby having forfeited the People’s right to prosecute for the crime involved should further investigation produce evidence pointing to defendant’s guilt sufficient to fill the unexpected gap. Based on analysis of the section in relation to the CPL as a whole, I believe the Legislature intended just that.
If we turn from the background of CPL 30.30 to analysis of its wording in relation to the CPL, resolution of the appeals before us turns on when within the meaning of CPL 30.30 (subd 1, par [a]) the criminal actions of which dismissal was sought commenced. When a criminal action is commenced is defined in both CPL 100.05 and CPL 1.20 (subd 17). CPL 100.05 provides that: “A criminal action is commenced by the filing of an accusatory instrument with a criminal court, and if more than one such instrument is filed in the course of the same criminal action, such action commences when the first of such instruments is filed. The only way in which a criminal action can be commenced in a superior court is by the filing therewith by a grand jury of an indictment against a defendant who has never been held by a local criminal court for the action of such grand jury with respect to any charge contained in such indictment. Otherwise, a criminal action can be commenced only in a local criminal court” (emphasis supplied). Since both a felony complaint and an indictment are within the definition of “accusatory instrument” (CPL 1.20, subd 1), the crucial question for the present cases is whether the subsequent accusatory instrument (the indictment) was filed “in the course of the same criminal action,” within the meaning of the first sentence of CPL 100.05, that is to say, whether the indictment obtained after dismissal of the felony complaint without the holding of defendant for Grand Jury action began a new criminal action or is but the continua *51 tion of the criminal action begun by the filing of the felony complaint. Clear from CPL 180.70, which describes proceedings upon a felony complaint, is it that until conclusion of the hearing on such a complaint a defendant has not been held for action of a Grand Jury and that when the complaint is dismissed and the defendant discharged defendant “has never been held by a local criminal court for the action of [the] grand jury” which later indicts him. No other conclusion is possible under the second sentence of CPL 100.05, therefore, than that filing of the Grand Jury indictment commences the criminal action on the charges made by the indictment and is not an accusatory instrument “filed in the course of the same criminal action”[1] (emphasis supplied) as the dismissed felony complaint.
The same result follows if we look at CPL 1.20 (subds 16, 17). The latter defines “Commencement of criminal action” in words almost identical with the first sentence of CPL 100.05; the former defines “Criminal action” as follows: “A criminal action (a) commences with the filing of an accusatory instrument against a defendant in a criminal court, as specified in subdivision seventeen; (b) includes the filing of all further accusatory instruments directly derived from the initial one, and all proceedings, orders and motions conducted or made by a criminal court in the course of disposing of any such accusatory instrument, or which, regardless of the court in which they occurred or were made, could properly be considered as a part of the record of the case by an appellate court upon an appeal from a judgment of conviction; and (c) terminates with the imposition of sentence or some other final disposition in a criminal court of the last accusatory instrument filed in the case” (Emphasis added.)
Can it be said that the indictments in the two cases before us were “directly derived” within the meaning of paragraph (b) from the felony complaint? In each case, of course, the complaint and the indictment derived from the same facts, but in neither did the indictment derive “di *52 rectly” from the complaint, as, for example, was the case in People v Lomax (50 NY2d 351), where on defendant’s motion under CPL 210.30 to dismiss an indictment for legal insufficiency of the evidence presented to the Grand Jury the People asked and were granted leave to resubmit, the authorization to resubmit being, by express provision of CPL 210.45 (subd 9) “deemed to constitute an order holding the defendant for the action of a grand jury with respect to such charge.” An indictment may be said to be “directly derived” from an earlier accusatory instrument whenever the defendant is as a result of the earlier instrument held for action by the Grand Jury that later indicts him; for examples, after a preliminary hearing (CPL 180.70, subd 1), or waiver of the right to preliminary hearing (CPL 180.30, subd 1). It cannot be said to be “directly derived”, as the majority would have it, simply because it can be “traced to” the felony complaint, whatever that may mean, in the face of the provisions of CPL 100.05 and 180.70 already discussed. Nor should the language of CPL 1.20 (subd 16, par [b]) with respect to proceedings which could be part of the record on appeal be construed, as the majority suggests, to make the felony complaint part of the same cause of action in view of the generality of that language and the more specific provision of CPL 100.05 to the contrary, and in view of the reference in paragraph (b) to “such accusatory instrument,” the antecedent for that phrase being “accusatory instruments directly derived from the initial one.”
The language of paragraph (c) of subdivision 16 bears out that view. According to it a criminal action terminates with “final disposition” of an accusatory instrument. While “final disposition” is not a term defined by the CPL, we have already seen that CPL 180.70 (subd 4) requires that absent reasonable cause to believe defendant committed any offense, the court “must dismiss the felony complaint and discharge the defendant from custody * * * 0r * * * exonerate the bail.” To those clear indicia of final disposition may be added CPL 160.50 which requires that upon termination of a criminal action in favor of the person accused all official records and papers be sealed and that photographs, fingerprints and the like be returned, and which provides in para *53 graph (b) of subdivision 2 that “a criminal action * * * shall be considered terminated in favor” of the person accused where an order to dismiss a felony complaint has been entered under CPL 180.70. Of interest in this connection also are CPL 180.10 (subd 6) which provides that at arraignment the court must make a bail determination “unless it intends immediately thereafter to dismiss the felony complaint and terminate the action,” CPL 160.60 which directs that upon termination of a criminal action, as defined in CPL 160.50 (subd 2), “the arrest and prosecution shall be deemed a nullity” (emphasis supplied) and the accused shall be restored to his previous status, and CPL 30.10 (subd 4, par [b]) which for purposes of timeliness recognizes as “a new charge” a second accusatory instrument filed after dismissal of the first such instrument “under directions or circumstances permitting the lodging of another charge for the same offense,” and excludes the period from the filing of the first accusatory instrument to its dismissal from the computation of the Statute of Limitations as to the second.
Against these multiple indicia of legislative intent that dismissal of a felony complaint without holding defendant for the Grand Jury terminates, and therefore is a final disposition of, the action begun by the filing of the felony complaint, the majority stresses the use in paragraph (c) of the words “last accusatory instrument filed in the case.” Simply stated, that is a bootstrap argument. There can be more than one accusatory instrument in a case, but for the reasons already stated at length there is a new case when a criminal action is begun by superior court indictment against a defendant who was not held for Grand Jury action when the felony complaint against him was dismissed by the local criminal court. By assuming that the two accusatory instruments are filed in the same case the majority begs the question.
Defendant argues further, and the majority appears to indorse the contention, that for purposes of the speedy trial policy enacted by CPL 30.30 the indictment cannot be regarded as beginning a separate action because a part of that policy, set forth in paragraphs (c) and (d) of subdivi *54 sion 5[2] of the section, is to prevent the District Attorney from extending the statutory period by converting or replacing a pending accusatory instrument. No such inference can be drawn, for a number of reasons. First, those paragraphs do extend the time, except when the applicable period has run before the new accusatory instrument is filed. Secondly, they are carefully worded to deal only with a replacement accusatory instrument filed “in the same criminal action” (emphasis supplied). Thirdly, they do not deal with an indictment as the replacement instrument because there is no need to do so, the time periods under subdivisions 1 and 2 being the same for a felony complaint and for an indictment, since both involve felony charges. It cannot be deduced from those subdivisions that the Legislature sought to foreclose use of a period longer than six months from the filing of the felony complaint, under the circumstances of the present cases, in which the indictment is not in the same criminal action, for doing so would ignore the clear language of CPL 100.05.
*55 No more reason for ignoring the distinction, clearly drawn throughout the CPL, between an indictment returned in the same criminal action against a defendant held on felony complaint for Grand Jury action and an indictment filed as a new charge after the felony complaint is dismissed without holding defendant for further action, can be found (as the majority’s footnote 1 suggests) in the provisions of CPL 30.30 (subd 4, par [g]), for a continuance when required by exceptional circumstances. The very word “continuance” speaks to the same, not a different, criminal action. There is no reason to conclude from that provision alone, in the face of the distinction noted above, that the Legislature intended to foreclose the possibility of the District Attorney gaining time by not asking, in response to defendant’s motion to dismiss, that defendant be held for Grand Jury action or by obtaining dismissal of the felony complaint himself. Not every dismissal without holding defendant for the Grand Jury followed by indictment results in the detriments to persons accused to which the majority refers, and none have been demonstrated in the present cases. The Legislature could, of course, have dealt directly with the problem, but could also have concluded that there was no need to do so in light of its constantly repeated use of the phrase “in the same criminal action.” Its failure to distinguish between dismissal on motion of defendant and dismissal at the behest of the prosecutor, despite the distinction elsewhere drawn in case law and proposed rules between those situations, bespeaks an intention to be more rather than less lenient in permitting prosecution. Its failure to speak explicitly to the situation of the instant cases may stem from a like attitude, especially since only felony charges can be involved.
With respect, I find the “anomalies” referred to in footnote 2 of the majority opinion nonexistent. The supposition that manipulation of defendant’s right to counsel will result from a holding that dismissal of a felony complaint terminates the action is answered by our decision in People v Skinner (52 NY2d 24 [decided herewith]), which holds that neither the absence of formal commencement of the criminal action nor the fact that defendant is not in cus *56 tody at the time of interrogation will prevent invocation of the right to counsel by a defendant known by the State to have counsel in a pending criminal investigation. The suggestion that a suppression determination made before dismissal of a felony complaint would have no effect on the trial of the indictment ignores the possible collateral estoppel effect of the determination (see People v Plevy, 52 NY2d 58 [decided herewith]). The contentions based on the effect on nonfelony cases wholly overlook the unique nature of a felony complaint, which is never the accusatory instrument upon which a felony charge is ultimately prosecuted (see Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL art 180, p 58), and in any event would arise not from anything germane to the statutes involved in the present appeals but from the omission from CPL 170.30 of a provision against resubmission similar to that contained in CPL 210.20 (subd 4).
To hold the charges involved in the present appeals not dismissible does not leave the defendants without protection against undue delay, for there remains the due process protection which we have not infrequently enforced (e.g., People v Singer, 44 NY2d 241; People v Staley, 41 NY2d 789; People v Taranovich, 37 NY2d 442). The only issue before us is whether the Legislature by enacting CPL 30.30 intended to require dismissal without trial'and without any demonstration of prejudice in the unique situation of these cases. The majority bases the conclusion that it did on a legislative purpose more procrustean than I believe can be found in the statute, bearing in mind its background and the language it uses. No express provision of the statute requires the result reached, and the purpose behind its enactment has not been so clearly articulated in relation to the situation of the present cases as to warrant our predicating dismissal upon the spirit or purpose of the statute alone. At most there exists a gap which should be filled by the Legislature, not by this court.
In each case, the order of the Appellate Division should be affirmed.
Judges Gabrielli, Jones and Fuchsberg concur with Judge Wachtler; Judge Meyer dissents and votes to affirm *57 in a separate opinion in which Chief Judge Cooke and Judge Jasen concur.
In each case: Order reversed and case remitted to the Appellate Division, Second Department, for further proceedings in accordance with the opinion herein.

. CPL 1.20 (subd 17), which is essentially the same as the first sentence of CPL 100.05, uses the words “in the course of the action.” Omission of the words “same criminal” before “action” is not regarded as significant.

. In pertinent part the subdivision reads: “5. For purposes of this section, * ** * (c) where a criminal action is commenced by the filing of a felony complaint, and thereafter, in the course of the same criminal action either the felony complaint is replaced with or converted to an information, prosecutor’s information or misdemeanor complaint pursuant to article 180 or a prosecutor’s information is filed pursuant to section 190.70, the period applicable for the purposes of subdivision one must be the period applicable to the charges in the new accusatory instrument, calculated from the date of the filing of such new accusatory instrument; provided, however, that when the aggregate of such period and the period of time, excluding the periods provided in subdivision four, already elapsed from the date of the filing of the felony complaint to the date of the filing of the new accusatory instrument exceeds six months, the period applicable to the charges in the felony complaint must remain applicable and continue as if the new accusatory instrument had not been filed; (d) where a criminal action is commenced by the filing of a felony complaint, and thereafter, in the course of the same criminal action either the felony complaint is replaced with or converted to an information, prosecutor’s information or misdemeanor complaint pursuant to article 180 or a prosecutor’s information is filed pursuant to section 190.70, the period applicable for the purposes of subdivision two must be the period applicable to the charges in the new accusatory instrument, calculated from the date of the filing of such new accusatory instrument; provided, however, that when the aggregate of such period and the period of time, excluding the periods provided in subdivision four, already elapsed from the date of the filing of the felony complaint to the date of the filing of the new accusatory instrument exceeds ninety days, the period applicable to the charges in the felony complaint must remain applicable and continue as if the new accusatory instrument had not been filed.”